(91 Misc. Rep. 200)

### In re NEWMAN'S ESTATE.

(Surrogate's Court, Bronx County.  June, 1915.)

TAXATION ⬗⟾895—TRANSFER TAX—VALUATION OF UNLISTED STOCK—EVI-
DENCE.

In determining the value of an unlisted stock for the purpose of a
transfer tax, direct evidence of sales at or about the time of death will
overcome the effect of an unverified report of an investors' agency, based
on offers alleged to have been made by unnamed brokers, and on quota-
tions in a financial publication the reliability of which is not shown.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721;
Dec. Dig. ⬗⟾895.]

In the matter of the transfer tax on the estate of Joel Newman,
deceased.  From order fixing transfer tax, the executors appeal.  Re-
versed, and appraiser's report remitted for correction.

Ira Bliss Stewart, of New York City, for appellants.
John Boyle, Jr., of New York City, for respondent.

SCHULZ, S.  At the time of the death of the testator, which oc-
curred on the 5th day of May, 1914, there were due to him certain
debts more particularly set forth in the report of the appraiser, as to
which the latter suspended appraisal.  The decedent also owned 384
shares of stock of a corporation, having a par value of $100 each,
which the appraiser valued for purposes of taxation at $300 each.
The executors appeal from the order of the surrogate, entered upon
the report of the appraiser, and the grounds of the said appeal are
stated to be that the appraiser erred (1) in failing to find that the
claims referred to were without value, and (2) in valuing the shares
of stock aforesaid at $300 each, instead of at their real value, which
they claim did not exceed $250 per share.

Upon the argument of the appeal, the first ground stated was not
insisted upon, and is not now urged, so that there remains only the
question whether the appraisal of the stock at $300 per share is
correct.  No witnesses were examined by the appraiser, the proof
being taken in the form of affidavits.  Upon behalf of the executors
there were submitted to the appraiser affidavits of the manager of
the New York store of the corporation.  These affidavits set forth
that the affiant has been connected with the corporation in an execu-
tive capacity since its incorporation, many years ago; that the stock
was not listed; that at the date of death of the testator, May 5, 1914,
the book value thereof was $130 per share; that the book value
thereof in February, 1915, was $150; that for several years last past
the company has paid annual dividends of 10 per cent. and 2½ per
cent.; that deponent knew of a sale of 100 shares of stock made
prior to February 10, 1915, and, near that date, at $275 per share,
and that he, as one of the executors of the will of the decedent, about
the 10th day of February, sold 34 shares of stock to one person and
50 shares to another at $275 a share; that most of the sales of stock
were to employés of the company in small lots, said sales being made

to increase the interest of the buyers in the success of the corporation; and he gave as his opinion that a fair and reasonable valuation of the said stock at the date of the death of the decedent was $250.

As against this affidavit, nothing appears to have been before the appraiser, except a report, not under oath, which did not deny any of the facts stated in the affidavit submitted on behalf of the executors, and which should not have been received. Matter of Chambers, N. Y. L. J., January 31, 1912. This report was made by the Investors' Agency, and among other things set forth that certain quotations therein more specifically set forth had been reported in a financial publication at Chicago. Nothing was before the appraiser to show what weight should be given to the reports in the publication mentioned. There was also a statement in this report that certain offers were made by "various brokers of New York, Chicago, etc.," offering shares of stock in lots varying from 5 to 50 shares at prices therein set forth, and which varied from 270 to 318 between April 29, 1914, and January 13, 1915, and the writer of the report states that in his opinion the shares can be fairly appraised as of May 5, 1914, at $300 per share. There is no actual sale set forth in the said report.

Upon these documents the appraiser found that the value of the shares was $300 per share. In my opinion, this finding upon the papers before him was not justified. I do not consider the unverified report of any weight as against the affidavit submitted on behalf of the executors. But, even if the report had been verified, I would still hesitate under the authorities to place a valuation of $300 upon the stock of this corporation, with the facts set forth in the affidavits of its manager before me and undisputed. That the transfer of these shares of stock is taxable as of the date of death is not open to discussion. The sales referred to in the affidavits of the executors were made some time after the death of the decedent, and it is urged that the value of the shares of stock at the time of death was less than the sale price. No reason is stated in the affidavit, however, why they were of less value at the time of the death of the decedent than they were at the time of the sale, except that the book value was less.

Upon the evidence before the appraiser, I am of the opinion that the value of the said shares of stock at the date of the death of the testator was the same as when the sales referred to in the affidavits were made. It follows that the shares of stock should have been assessed at $275 each. The order will therefore be reversed, and the appraiser's report remitted to him for correction, as indicated.

Order reversed, and appraiser's report remitted for correction.